David B. Rosenbaum, 009819
Andrew G. Pappas, 034432
Brandon T. Delgado, 035924
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
apappas@omlaw.com
bdelgado@omlaw.com

Attorneys for Defendant Packet Forensics, LLC

OSBORN MALEDON ATTORNEYS AT LAW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B.W.,<br><br>Plaintiff,<br><br>vs.<br><br>Netskope, et al.,<br><br>Defendants. | Case No. CV-26-04448-PHX-SPL<br><br>**MOTION TO DISMISS BY DEFENDANT PACKET FORENSICS, LLC** |

Defendant Packet Forensics, LLC, ("Packet Forensics") moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the sole claim against it—the "civil conspiracy" claim alleged in Count 9.

Virtually all of the Complaint's 52 pages concern Plaintiff's contract work with the other defendant, Netskope, asserting twelve claims against that company. Netskope engaged Plaintiff as an independent contractor to recruit personnel. Related to her civil conspiracy claim, Plaintiff alleges that Packet Forensics contracted with Netskope to conduct clearance investigations on candidates recruited by Plaintiff.

The conspiracy claim fails, for three reasons. First, the Complaint fails to allege facts establishing that the Defendants had an agreement to commit a tortious act.

Plaintiff's formulaic recitation of the elements of a conspiracy does not meet federal pleading standards. Second, the sole allegedly wrongful act involving Packet Forensics is the Plaintiff's conclusory and unsupported allegation that Packet Forensics breached its contract with Netskope. However, there can be no civil conspiracy liability for breach of contract, because breach of contract is not a tort. Third, the Complaint fails to allege facts establishing that Packet Forensics' actions caused Plaintiff damages.

For these reasons, the Court should dismiss the claim against Packet Forensics. A certification of consultation accompanies this motion.

## I. THE COMPLAINT'S FACTUAL ALLEGATIONS

In October 2023, Netskope engaged Plaintiff to provide "staffing" and "hiring" services. (Compl. ¶ 8.)[1] As Plaintiff describes, Plaintiff was charged with building and staffing Netskope's "federal environment" and "federal operations." (*Id.* p. 2) In short, Plaintiff was essentially a recruiter for Netskope.

Given the nature of Netskope's "federal operations," candidates would need to obtain federal security clearances. (*Id.* ¶ 20.) To assist with security clearances, Netskope engaged Packet Forensics, a Department of Defense Contractor with a facility clearance. (*Id.* p. 2; ¶¶ 3, 20, 23.) Netskope and Packet Forensics entered into a Master Services Agreement. (*Id.* ¶ 20.) Under that agreement, Packet Forensics agreed to conduct "clearance investigation[s]" of the candidates. (*Id.* ¶¶ 3, 20, 23.) As part of her recruiting and staffing duties, Plaintiff was assigned to work with Packet Forensics. (*Id.* ¶ 3.) Plaintiff asserts, without factual support, that Packet Forensics was unable to fulfill its obligation to provide security clearances. (*Id.* ¶ 20.)

Plaintiff informed Netskope's Executive Vice President of this issue, referring to it as a "clearance compliance deficiency." (*Id.*) Plaintiff asserts that raising this issue with Netskope "constituted protected activity concerning a potential violation of law." (*Id.*) Following Plaintiff's deficiency notice, Netskope's Executive Vice President told Plaintiff

---

[1] This motion, as it must, leaves undisputed all facts pled in the Complaint.

that the clearance issue was being worked on, but according to Plaintiff, the issue remained, and Netskope thereafter continued to accept federal contracts it could not fulfill. (*Id.* ¶ 22.) During Plaintiff's final six months, Plaintiff grew "increasingly uncomfortable" with Netskope's business practices. (*Id.* ¶ 28.) Plaintiff raised several issues with Netskope's Executive Vice President, which she claims is a "protective activity." (*Id.*) Plaintiff alleges that she thereafter suffered various adverse employment actions and harassment by Netskope, that Netskope's Executive Vice President "solicited Plaintiff's Social Security Number," and that he also made misrepresentations regarding Packet Forensics, including his "financial stake" in Packet Forensics. (*Id.* ¶¶ 22, 23, 28–49.) In May 2025, Netskope terminated Plaintiff's engagement. (*Id.* ¶ 37.)

Plaintiff's Complaint largely focuses on Netskope's actions, alleging twelve causes of action against the company. The Complaint alleges a single civil conspiracy claim against Packet Forensics, Netskope, and Netskope's Executive Vice President. (*Id.* ¶¶ 96–99.)

## II. LEGAL ARGUMENT

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 (2002) (citation omitted). "A mere agreement to do a wrong imposes no liability; an agreement plus a wrongful act may result in liability." *Id.* "In short, liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'" *Id.* In other words, absent an underlying tort causing damages, "there is no" standalone "civil action for conspiracy." *Est. of Hernandez v. Flavio*, 187 Ariz. 506, 510 (1997).

First, Plaintiff fails to allege facts establishing an agreement to commit a tort. Plaintiff begins by asserting that Netskope and Packet Forensics "combined, agreed, and conspired to commit one or more of the tortious acts described herein." (Compl. ¶ 97.)

However, this “formulaic recitation of the elements” of a conspiracy claim “will not do.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Plaintiff’s other allegations also do not supply the missing facts. Plaintiff states that Netskope, Netskope’s Executive Vice President, and Packet Forensics “entered into and perpetuated a working arrangement tainted by” the Executive Vice President’s “undisclosed and inadequately disclosed personal financial interest in” Packet Forensics. (Compl. ¶ 97.) However, an agreement to enter into a working arrangement that is ultimately “tainted” by some undisclosed conflict by one Defendant, does not establish an agreement among all Defendants to commit a tort. *See Ashcroft*, 556 U.S. at 678 (facts must establish a claim for relief that is “plausible on its face”). Nor does Plaintiff explain how this would be a tort against Plaintiff.

Plaintiff next alleges that Packet Forensics signed a Master Services Agreement to provide “clearance obligations it could not fulfill,” and that Netskope’s Executive Vice President “represented to Plaintiff that the resulting failures were being worked on.” (Compl. ¶ 97.) This too does not establish an agreement to commit a tort or a tort against Plaintiff. At most, Plaintiff’s conclusory allegation appears to suggest that Packet Forensics breached its contract *with Netskope*, not with Plaintiff. Moreover, a “breach of contract is not a tort unless the law imposes a duty on the relationship created by the contract which exists apart from the contract.” *Aspell v. Am. Cont. Bridge League of Memphis, Tenn.*, 122 Ariz. 399, 402 (App. 1979). No such duty exists because there is no contracting relationship with Plaintiff.

Second, Plaintiff does not allege facts establishing that Defendants actually committed any tort through the nonexistent agreement to do so. A review of Plaintiff’s claim reveals that, while Plaintiff mentions Packet Forensics a few times, the claim amounts only to a list of Plaintiff’s grievances relating to actions, not torts, purportedly taken by Netskope’s Executive Vice President (EVP) and Netskope:

- The “EVP’s affirmative minimization of his conflict of interest and succession plan to Plaintiff;” (Compl. ¶ 98.)

- The "EVP's direct management of the [Packet Forensics] relationship for personal business purposes while representing to Plaintiff that issues were being resolved;" (*id.*)
- The "EVP's personal solicitation of Plaintiff's Social Security Number . . . under conditions that were not disclosed to Plaintiff;"
- Netskope's "failure to implement adequate governance oversight that would have revealed and prevented the EVP's conduct;" (*id.*)
- The EVP took "direct personal control of the [Packet Forensics] relationship and bypassing Plaintiff's operational oversight;" (*id.*)
- The EVP and Packet Forensics "communicated through clearance-restricted channels." (*id.*)

In sum, the full list in paragraph 98 of the Complaint does not establish a tort that is plausible on its face. And even if the list contained facts that could constitute a tort against Plaintiff, none is tied to an agreement between Netskope and Packet Forensics to commit a tort—the first necessary element of a civil conspiracy. (*See* Compl. ¶ 98.) Notably, within that list, Plaintiff again asserts that Packet Forensics "could not fulfill" its obligations under its Master Services Agreement with Netskope. Again, if true, that would at most suggest a breach of contract, not a tort. *Aspell*, 122 Ariz. at 402.

Third, Plaintiff fails to allege facts establishing that an agreement by Defendants to commit a tort, and the accomplishment of that tort, caused Plaintiff damages. Plaintiff offers only a label and conclusion that Defendants are "jointly and severally liable for the damages caused by the conspiracy." (Compl. ¶ 99.) This statement merely assumes damages and does not offer any supporting facts.

## III. CONCLUSION

For the foregoing reasons, the Court should dismiss the sole claim asserted against Defendant Packet Forensics, LLC.

///

///

DATED this 17th day of September, 2026.

OSBORN MALEDON, P.A.

By: s/ Brandon T. Delgado

David B. Rosenbaum
Andrew G. Pappas
Brandon T. Delgado
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793

Attorneys for Defendant Packet Forensics, LLC

**CERTIFICATE OF SERVICE**

I certify that the following party in this case is not registered as a CM/ECF user. I served, on September 17, 2026, the foregoing document, by U.S. mail and e-mail, as follows:

B.W.
3920 E. Thomas Rd., #15013
Phoenix, AZ 85060
BWvNTSK@proton.me
Pro Se Plaintiff

s/ C. Buxton