Leah S. Freed, SBN 021332
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700
Fax: 602-778-3750
leah.freed@ogletree.com
*Attorney for Defendant Netskope, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

B.W.,

Plaintiff,

v.

Netskope, Inc., a Delaware corporation; Packet Forensics,

Defendants.

No. 2:26-cv-04448-SPL

**DEFENDANT NETSKOPE, INC.'S MOTION TO ENFORCE SETTLEMENT**

Assigned to the Hon. Steven P. Logan

Defendant Netskope, Inc. ("Defendant" or "Netskope"), by and through undersigned counsel, hereby moves the Court to enforce the parties' settlement agreement. Prior to filing suit, Plaintiff agreed to a full release of all claims against Netskope, in exchange for a monetary payment by Netskope (among other consideration). Accordingly, her claims against Netskope must be dismissed, with prejudice. In support of this Motion, Defendant states as follows:

## I. FACTUAL BACKGROUND

Between October 2023 and May 2025, Plaintiff provided services to Defendant pursuant to the terms of an independent contractor agreement. (Doc. 2, ¶ 8). On May 13, 2025, Defendant terminated Plaintiff's contract. (Doc. 2, ¶ 37). Following the termination of her agreement, Plaintiff threatened to bring legal action against Netskope.

In September 2025, Plaintiff sent a formal settlement demand to Defendant. Plaintiff's demand alleged several potential claims against Netskope, including misclassification under the Fair Labor Standards Act ("FLSA") and sex discrimination and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff demanded $460,000 in monetary relief, plus restricted stock units, in exchange for "a release of her claims against the Company." (Exhibit A-1).

**A. The Parties Agree To The Material Terms of Settlement.**

At the time of her demand, Plaintiff was represented by attorney Jessica Miller of Robinson Law Offices. Between September 2025 and May 2026, Ms. Miller and Defendant's Vice President, Global Employment Counsel, Erin Emmer, negotiated the terms of a settlement between Plaintiff and Netskope.

On April 20, 2026, Ms. Miller sent a "final" settlement proposal to Ms. Emmer. (Exhibit A-2). Ms. Miller noted that "if Netskope desires specific confidentiality terms, I consider those material terms so they must be agreed upon before the parties reach a binding settlement. [Plaintiff] will agree to maintain confidentiality of the agreement and the settlement amount, which is standard." (Id.). On May 4, 2026, Ms. Emmer responded in writing: "We agree to settle all potential claims for $[confidential amount], including dismissal of the pending EEOC charge."[1] (Exhibit A-3). On May 5, 2026, Ms. Emmer emailed Ms. Miller and said, "**I assume since we're aligned on the material terms of the settlement that we are not proceeding with [EEOC] mediation, but please confirm**." (Exhibit A-4). **In response, Ms. Miller stated, "[c]orrect.** Can you email the mediator and I'll confirm?" (Id.).

**B. Ms. Miller and Ms. Emmer Prepare A Written Agreement to Memorialize the Settlement Terms.**

Between May 4, 2026 and May 19, 2026, Ms. Emmer and Ms. Miller exchanged emails and drafts of a written settlement agreement to memorialize the parties' agreement. On May 8, 2026, Ms. Emmer sent a redline and clean version of the agreement with the changes discussed and agreed to during a prior telephone conference. (Id.). That same day,

---

[1] Because the parties agreed to confidentiality of the monetary consideration provided under the agreement, Defendant will refer to the amount as "$[confidential amount]" herein.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

Ms. Miller confirmed in writing: "Those changes are all accepted, please send to [Plaintiff] to sign via docusign." (Exhibit A-5). On May 12, 2026, Ms. Miller emailed Ms. Emmer to ask that she resend the settlement agreement to Plaintiff because the link expired. (Exhibit A-6).

On May 15, 2026, Ms. Miller emailed Ms. Emmer stating that she made a mistake regarding the scope of the non-disparagement clause. (Exhibit A-7). Ms. Miller and Ms. Emmer verbally agreed to revise the non-disparagement clause of the settlement agreement. (Exhibit A). On May 19, 2026, Ms. Emmer sent a redlined agreement to Ms. Miller reflecting the final version of the settlement agreement. (Exhibit A-8).

### C. Plaintiff Refuses To Sign the Settlement Agreement and Attempts to Renegotiate.

On May 27, 2026, Plaintiff inexplicably sent Netskope a "Settlement Demand and Pre-Filing Disclosure." Upon Ms. Emmer's request for clarification, Plaintiff confirmed that she was no longer represented by her prior legal counsel, Ms. Miller. (Exhibit A-9). On June 3, 2026, Ms. Emmer responded that Plaintiff's communication was unexpected because Defendant believed "a settlement had been finalized." (Id.). Ms. Emmer explained that her last communication with Ms. Miller concerned non-material revisions to the settlement agreement, which were agreed to by the parties. After several email exchanges, Ms. Emmer reiterated to Plaintiff that "the Company agreed to a settlement for all potential claims which is standard for general release agreements. We are not open to re-negotiating the financial settlement terms." (Id.).

Despite the binding agreement to settle her claims, Plaintiff filed her Complaint on June 26, 2026. (Doc. 2).

## II. ARGUMENT

### A. The Parties Formed an Enforceable Settlement Agreement

"A federal district court has inherent authority to enforce agreements that settle litigation before it." *Benge v. Ryan*, No. CV-14-00402-PHX-DGC-BSB, 2017 U.S. Dist. LEXIS 20697, 2017 WL 588706, at *2 (D. Ariz. Feb. 14, 2017) (citing *In re City Equities*

*Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994)). A motion to enforce a settlement agreement is "essentially . . . an action to specifically enforce a contract." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989). "For an enforceable contract to exist, there must be an offer, acceptance, and consideration." *Tabler v. Indus. Comm'n of Arizona*, 202 Ariz. 518, 47 P.3d 1156, 1158 (Ariz. Ct. App. 2002). For a binding contract to exist, it is not necessary that every minor element of the contract be agreed upon. "[T]he actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain." *Schade v. Diethrich*, 158 Ariz. 1, 760 P.2d 1050, 1058 (Ariz. 1988) (quoting Restatement of Contracts § 33(3)). A binding contract requires that the parties mutually consent to the material terms. *Hill-Shafer P'ship v. Chilson Family Trust*, 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990).

Here, the communications between Ms. Miller and Ms. Emmer establish that an enforceable contract was formed between Plaintiff and Netskope. On May 4, 2026, Defendant made an offer to settle all potential claims for $[confidential amount], including dismissal of the pending EEOC Charge and provided a settlement agreement outlining the material terms. On May 8, 2026 Plaintiff accepted the offer and agreed to the material terms in the settlement agreement. There was also sufficient consideration for a contract: payment of $[confidential amount] by one side and a general release and dismissal of a pending EEOC Charge on the other.

**B. The Parties' Conduct Confirms Intent to be Bound**

Significantly, the parties even acted upon their agreement and canceled mediation with the specific understanding that they were in agreement on the material terms of the settlement agreement. *Schade*, 760 P.2d at 1059 (the fact that the parties began performance "is nearly always evidence that they regard the contract as consummated and intend to be bound by."). By cancelling the scheduled EEOC mediation, Netskope partially performed and detrimentally relied on the parties' agreement. *Id.* Netskope forewent the



Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

dispute-resolution mechanism, in reliance on the parties' agreement, further demonstrating that the parties understood the settlement to be final and binding.

Moreover, a contractual term is material only if it concerns a "significant issue" in the parties' agreement. *Marana 670 Holdings, LLC v. Spirit Underground, LLC*, Nos. 2 CA-CV 2011-0136, 2 CA-CV 2012-0026, 2012 WL 4503733, at *4 (Ariz. Ct. App. Oct. 1, 2012). The material terms—monetary consideration, release of all claims, and dismissal of the EEOC charge—were agreed to on May 8, 2026. Plaintiff may argue that the dispute over the non-disparagement provision demonstrates that the parties never reached a final meeting of the minds, nonetheless, the record forecloses this argument. Ms. Miller's own email characterizes the non-disparagement issue as a "mistake" that she wanted to correct, not as an open term that was never agreed to. By definition, the resulting modification was non-material and was made to an already-formed agreement.

**C. Plaintiff Cannot Avoid the Settlement by Refusing to Sign or Changing Counsel**

The parties entered into a binding settlement. Plaintiff cannot avoid her obligations under a binding settlement by refusing to sign the settlement agreement. The fact that the agreement was not signed "does not change the fact that there was an offer, acceptance, consideration, and sufficient specification of terms so that the obligations involved could be ascertained." *Gerow v. Falcone*, No. CV-23-01059-PHX-DGC2026, U.S. Dist. LEXIS 34772, at *5 (D. Ariz. Feb. 20, 2026) (holding that email correspondence between counsel created a binding settlement contract and granting a motion to enforce settlement). "A contract may be formed, even if not formally executed, if it is clear the parties intended to bind themselves to the terms." *Johnson Int'l v. City of Phoenix*, 192 Ariz. 466, 470, 967 P.2d 607, 611 (App. 1998); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (finding that a plaintiff is bound by the terms of an oral settlement agreement).

The parties' communications and correspondence unequivocally establish this case settled with the terms of the May 19, 2026 agreement. Plaintiff is bound by these terms. *Id.*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.").

Nor can Plaintiff withdraw from the settlement by claiming that her counsel lacked authority to enter into the binding agreement. Arizona federal and state courts recognize that a settlement agreement reached by attorneys for the parties is binding and enforceable where the attorneys had authority to enter into the agreement, "regardless of whether the parties ever signed a written document." *Nadel v. Nadel*, No. 95-16936, 1996 WL 742459, at *1 (9th Cir. Dec. 19, 1996) (citing *Hays v. Fischer*, 161 Ariz. 159, 777 P.2d 222 (App. 1989)). Here, Plaintiff's counsel negotiated the settlement on Plaintiff's behalf over a period of several months and expressly accepted the material terms of the settlement agreement. At no point during these negotiations, or even upon acceptance, did Plaintiff's counsel suggest that authority was limited, conditioned on further approval, or otherwise insufficient to bind Plaintiff. Plaintiff's counsel had authority to settle, and Plaintiff cannot avoid the resulting agreement by now challenging the authority under which her counsel negotiated and accepted its terms.

Ultimately, Plaintiff's conduct reflects a pattern of attempting to retreat from agreed-upon terms after accepting them through counsel. Plaintiff expressly authorized counsel to negotiate and accept the settlement, later terminated that counsel, and then sought to revisit the agreement. This continuing course of conduct has unnecessarily prolonged resolution of a matter that the parties have already settled.

## III. CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that the Court enforce the parties' binding settlement agreement and enter an Order requiring Plaintiff to provide Defendant with an executed copy of the Settlement Agreement and dismissing Plaintiff's claims with prejudice.

RESPECTFULLY SUBMITTED this 18th day of September, 2026.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Leah S. Freed*
Leah S. Freed
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
*Attorney for Defendant Netskope, Inc.*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of September, 2026, I electronically submitted the attached document to the Clerk's office using CM/ECF system for filing, and emailed a copy of the foregoing to:

B.W.
3920 E. Thomas Road #15013
Phoenix, AZ 85060
BWvNTSK@proton.me
*Plaintiff Pro Se*

/s/ Morgan A. Fingleton