David B. Rosenbaum, 009819
Andrew G. Pappas, 034432
Brandon T. Delgado, 035924
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
apappas@omlaw.com
bdelgado@omlaw.com

Attorneys for Defendant Packet Forensics, LLC

OSBORN MALEDON ATTORNEYS AT LAW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B.W.,<br><br>Plaintiff,<br><br>vs.<br><br>Netskope, et al.,<br><br>Defendants. | Case No. CV-26-04448-PHX-SPL<br><br>**DEFENDANT PACKET FORENSICS, LLC'S MOTION TO DISMISS ALL CLAIMS AGAINST IT IN PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Packet Forensics, LLC ("Packet Forensics") moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the two claims against it in Plaintiff's First Amended Complaint: (1) the "civil conspiracy" claim alleged in Count 9 and (2) the "invasion of privacy" claim alleged in Count 11. Virtually all of the Complaint's 105 pages concern Plaintiff's contract work with the other defendants, Netskope and its Executive Vice President (EVP).

Relevant to her claims against Packet Forensics, Netskope engaged Plaintiff as an independent contractor to recruit personnel. Plaintiff alleges that Packet Forensics contracted with Netskope to conduct clearance investigations on candidates that Plaintiff recruited, and that in the process Netskope's EVP wrongfully obtained Plaintiff's social

security number and then disclosed it to Packet Forensics. Plaintiff does not and cannot allege that Packet Forensics used or otherwise disclosed her social security number to others.

Plaintiff's conspiracy claim fails for three reasons. First, the Complaint fails to allege facts establishing that Packet Forensics and the other Defendants agreed to commit a tortious act. The allegation that the Defendants shared a financial interest is not enough to infer an agreement to commit a tort. Second, the alleged acts involving Packet Forensics are not torts, but rather a laundry list of Plaintiff's grievances. Third, the Complaint fails to allege facts establishing that Packet Forensics' actions caused Plaintiff damages.

Plaintiff's invasion-of-privacy claim also fails. The Complaint does not allege facts establishing that Packet Forensics intentionally intruded upon Plaintiff's expectation that her social security number is private. Further, the Ninth Circuit has held that a social security number is not private, finding that another's access to that information is not highly offensive. District courts within this circuit have followed suit by dismissing privacy claims involving the unauthorized disclosure and photocopying of personal data such as a person's social security number.

For these reasons, the Court should dismiss the claims against Packet Forensics. A certification of consultation accompanies this motion.

## I. THE COMPLAINT'S FACTUAL ALLEGATIONS

In October 2023, Netskope engaged Plaintiff to provide "staffing" and "hiring" services. (Compl. ¶ 8.)[1] As Plaintiff describes it, Plaintiff was charged with building and staffing Netskope's "federal operations." (*Id.* ¶¶ 8–9.)

Given the nature of Netskope's "federal operations," candidates would need to obtain federal security clearances. (*Id.* ¶ 24.) To assist with security clearances, Netskope engaged Packet Forensics, a Department of Defense Contractor with a facility clearance. (*Id.* p. 2; ¶¶ 3, 24, 31.) Netskope and Packet Forensics entered into a Master Services

---

[1] This motion, as it must, accepts as true all facts pled in the Complaint.

Agreement. (*Id.* ¶ 24.) Under that agreement, Packet Forensics agreed to conduct "clearance investigation[s]" and eventually "hold security clearances" for the candidates that would be employed by Packet Forensics. (*Id.* ¶¶ 3, 24, 25, 32.) As part of her recruiting and staffing duties, Plaintiff was assigned to work with Packet Forensics. (*Id.* ¶ 3.) Plaintiff asserts, without factual support, that Packet Forensics was unable to fulfill its obligation to provide security clearances. (*Id.* ¶ 24.)

Plaintiff informed Netskope's EVP of this issue, referring to it as a "clearance compliance deficiency." (*Id.*) Plaintiff asserts that raising this issue with Netskope "constituted protected activity concerning a potential violation of law." (*Id.*) Following Plaintiff's deficiency notice, Netskope's EVP told Plaintiff that the clearance issue was being worked on, but according to Plaintiff, the issue remained, and Netskope thereafter continued to accept federal contracts it could not fulfill. (*Id.* ¶¶ 25, 31.) During Plaintiff's final six months, Plaintiff grew "increasingly uncomfortable" with Netskope's business practices. (*Id.* ¶ 40.) Plaintiff raised several issues with Netskope's EVP, which she claims is a "protective activity." (*Id.*)

Plaintiff alleges that she thereafter suffered various adverse employment actions and harassment by Netskope, that Netskope's EVP "personally solicited Plaintiff's Social Security Number" under the misrepresentation "that it would be submitted toward a security clearance" through Packet Forensics, and that Netskope's EVP also made a misrepresentation regarding his "financial stake" in Packet Forensics. (*Id.* ¶¶ 32, 37, 42–51.) Plaintiff asserts that Packet Forensics "received, or was given access to, Plaintiff's Social Security Number." (*Id.* ¶ 34.) She further alleges that Packet Forensics retains her social security number on the basis that she "never received any notice of disposition, destruction, or return of that information." (*Id.*) In May 2025, Netskope terminated Plaintiff's engagement. (*Id.* ¶ 51.)

## II. LEGAL ARGUMENT

The Complaint alleges two claims against Packet Forensics: civil conspiracy (count 9) and invasion of privacy (court 11). (*Id.* ¶¶ 123–28, 137–47.) Both claims should be

dismissed.

**A. The Court should dismiss Plaintiff's civil-conspiracy claim.**

Plaintiff fails to state a civil-conspiracy claim against Packet Forensics. "For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 (2002) (citation omitted). "A mere agreement to do a wrong imposes no liability; an agreement plus a wrongful act may result in liability." *Id.* "In short, liability for civil conspiracy requires that two or more individuals agree and thereupon accomplish 'an underlying tort which the alleged conspirators agreed to commit.'" *Id.* In other words, absent an underlying tort causing damages, "there is no" standalone "civil action for conspiracy." *Est. of Hernandez v. Flavio*, 187 Ariz. 506, 510 (1997).

**1. Plaintiff fails to plead facts showing that Packet Forensics and the other Defendants agreed to commit a tort.**

Plaintiff's civil-conspiracy claim against Packet Forensics should be dismissed for at least three reasons. First, Plaintiff fails to allege facts establishing an agreement to commit a tort. Plaintiff begins by asserting that the "facts" listed in Count 9 "establish the agreement." (Compl. ¶ 124.) Plaintiff admits that there is no express agreement to commit a tort. (*Id.*) Instead, Plaintiff asks the Court to infer an agreement based on the facts in Count 9. (*Id.*)

But Plaintiff's allegations show just the opposite. Plaintiff alleges that Defendants undertook "independent acts," which undermines any suggestion that they acted under an agreement to commit a tort. (*Id.*) True, Plaintiff alleges that Defendants' acts ultimately "serv[ed] a single shared financial interest, from which the existence of an agreement is reasonably inferred." (*Id.*) Even assuming Plaintiff's factual allegations establish a shared financial interest, however, that two defendants may share such an interest does not alone imply an agreement to commit a tort that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hillis v. Heineman*, No. CV-09-73-PHX-DGC, 2009 WL

2222709, at *4 (D. Ariz. July 23, 2009) (finding, under *Iqbal*, that factual allegations establishing only a "mere possibility of misconduct" is not enough, and no facts showed that the defendant "actually *agreed*" with the other defendant to commit the tort at issue); *Wells Fargo Bank*, 201 Ariz. at 499 (noting that the correspondence and meetings raised "serious questions" about the Bank's conduct, but finding no "*agreement* to participate in a tort").

None of the facts Plaintiff alleges can establish such an agreement. The only agreement Plaintiff mentions is the Master Services Agreement between Packet Forensics and Netskope. (Compl. ¶ 124.) Specifically, Plaintiff alleges that Packet Forensics signed a Master Services Agreement to provide "hold clearances . . . it could not and did not fulfill," and that Netskope's EVP represented to Plaintiff that the resulting "failure was being worked on." (*Id.*) This does not establish an agreement to commit a tort or a tort against Plaintiff.

**2. Plaintiff fails to plead facts showing that any Defendant committed a tort pursuant to an agreement.**

Second, Plaintiff does not allege facts establishing that Defendants actually committed any tort through an agreement to do so. Rather, Plaintiff's claim merely catalogues Plaintiff's many grievances relating to actions purportedly taken by Netskope, Netskope's EVP, and Packet Forensics:

- The "EVP's affirmative minimization of his conflict of interest and succession plan to Plaintiff;" (Compl. ¶ 126.)
- Packet Forensics' "participation in an arrangement structured around the EVP's personal financial interest and succession plan."
- The "EVP's direct management of the [Packet Forensics] relationship for personal business purposes while representing to Plaintiff that issues were being resolved;" (*id.*)
- The "EVP's personal solicitation of Plaintiff's Social Security Number . . . under conditions that were not disclosed to Plaintiff;"

- Netskope's "failure to implement adequate governance oversight that would have revealed and prevented the EVP's conduct;" (*id.*)
- The EVP took "direct personal control of the [Packet Forensics] relationship and bypassing Plaintiff's operational oversight;" (*id.*)
- The EVP and Packet Forensics "communicated through clearance-restricted channels;" (*id.*)
- Packet Forensics executed the "Master Service Agreement committing to clearance obligations it could not perform;"
- Packet Forensics' continued "to serve as the clearance vendor for the Company's federal environment while its principals funded and staffed the EVP's personal successor venture;" (*id.*)
- Plaintiff observed that there was no "internal ticket in the Company's work-tracking system reflecting a second purchase order issued under the Master Service Agreement." (*id.* ¶ 127.)

None of Plaintiff's allegations, separately or together, can plausibly establish a tort against Plaintiff. And even if they could, none is tied to an agreement between Netskope, its EVP, and Packet Forensics to commit that tort—the first necessary element of a civil conspiracy.

**3. Plaintiff fails to allege facts establishing damages.**

Third, Plaintiff fails to allege facts establishing that an agreement by Defendants to commit a tort, and the accomplishment of that tort, caused Plaintiff damages. Plaintiff concludes that Defendants are "jointly and severally liable for the damages caused by the acts committed pursuant to the conspiracy." (Compl. ¶ 128.) But this statement merely assumes damages; it does not offer any supporting facts. Plaintiff also asserts the following categories of harm: (1) "compensation without informed consent;" (2) "ongoing personal security risk and psychological harm;" and (3) "harm to Plaintiff's federal contractor application." (*Id.*) But again, merely listing categories of damages, without supporting factual allegations, does not plausibly allege that these damages exist or that

the damages were caused by a conspiracy. *Iqbal*, 556 U.S. at 678.

Finally, as part of her conspiracy claim, Plaintiff also alleges facts regarding her social security number. (*Id.* ¶¶ 124, 126, 128.) Specifically, Plaintiff alleges that Netskope's EVP personally solicited Plaintiff's social security number and then submitted it to Packet Forensics. (*Id.*) As demonstrated below, Plaintiff's allegations fail to establish the tort for invasion of privacy. Thus, those non-tortious acts cannot serve as a basis for the alleged conspiracy. And again, even if a tort existed, Plaintiff nowhere alleges facts sufficient to plausibly show that Defendants actually agreed to tortiously obtain and retain Plaintiff's social security number.

**B. The Court should dismiss Plaintiff's invasion-of-privacy claim.**

Plaintiff also fails to state an invasion-of-privacy claim. Arizona follows the Restatement (Second) of Torts for invasion-of-privacy claims, including a claim for intrusion upon seclusion. *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 279 (App. 1997). "A claim for intrusion upon seclusion requires the Plaintiff to prove two elements: (i) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns and (ii) that the intrusion would be highly offensive to a reasonable person." *Davis v. HDR Inc.*, 606 F. Supp. 3d 898, 910 (D. Ariz. 2022) (citing *Hart* and Restatement (Second) of Torts § 652(B)). Plaintiff fails to plead facts establishing either element of her claim.

**1. Plaintiff fails to plead facts showing an intentional intrusion by Packet Forensics.**

First, Plaintiff fails to plead any facts plausibly establishing that Packet Forensics intentionally intruded upon her private affairs. Recognized examples of an intentional intrusion include when a defendant "forces his way into the plaintiff's room in a hotel," when a defendant looks into a plaintiff's "upstairs windows with binoculars," or when a defendant forges a "court order to permit an inspection" of a plaintiff's personal documents. *Davis*, 606 F. Supp. 3d at 910. A defendant does not intentionally intrude upon another's seclusion when the defendant was merely "passive." *Prutsman v. Nonstop*

*Admin. & Ins. Servs., Inc.*, 2023 WL 5257696, at *1 (N.D. Cal. Aug. 16, 2023) (applying Restatement (Second) of Torts); *see also Warner v. Midland Credit Mgmt., Inc.*, 540 F. Supp. 3d 946, 971 (C.D. Cal. 2021) (applying the same elements in the Restatement (Second) of Torts and noting the defendant did not have "any interactions with Plaintiff").

Taking Plaintiff's allegations as true, Packet Forensics did not intentionally intrude upon Plaintiff's expectation of privacy in her social security number. Plaintiff alleges that Netskope's EVP solely and "personally" solicited Plaintiff's social number under a misrepresentation (Compl. ¶ 139), after which Packet Forensics "received, or was given access to, Plaintiff's Social Security Number" (*id.* ¶ 145). Plaintiff does not allege that Packet Forensics intentionally sought or accessed Plaintiff's social security number for security clearance purposes or otherwise sought it from Netskope's EVP. Instead, on Plaintiff's own account, Packet Forensics passively *received* her social security number. (*Id.*) That allegation cannot establish an intentional intrusion in the first instance. Neither can Plaintiff's allegation that Packet Forensics thereafter *retained* her social security number.

**2. As a matter of law, Packet Forensics' actions were not "highly offensive."**

Even if there were an intentional intrusion by Packet Forensics, Plaintiff's claim would fail as a matter of law. Again, to establish an invasion-of-privacy claim, Plaintiff would have to allege facts showing an "intrusion [that] would be highly offensive to a reasonable person." *Davis*, 606 F. Supp. 3d at 910. The Ninth Circuit has held, however, that a person's "social security number [is] not generally considered private" and thus is not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person.'" *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 996 (9th Cir. 2023) (cleaned up) (quoting Restatement (Second) of Torts § 652(B)).

Packet Forensics' alleged access to and retention of Plaintiff's social security number therefore cannot support an invasion-of-privacy claim. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (applying "highly offensive" standard

and collecting cases finding "disclosure to third parties" of another's social security number or other personal data, without permission, was not sufficient to state an invasion of privacy claim); *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (finding unauthorized photocopying of "Plaintiff's identity documents" not sufficient to state a claim for invasion of privacy).

**3. Plaintiff fails to allege facts establishing damages.**

Plaintiff's allegations also do not establish any damages. Plaintiff again merely alleges causation and lists categories of damages without supporting facts to make plausible on their face that those damages exist or were caused by Packet Forensics' conduct. (Compl. ¶ 146.) For example, Plaintiff asserts "psychological harm" from the alleged "intrusion," but asserts no facts to support this category of damage. (*Id.*) Plaintiff also asserts "harm to Plaintiff's federal contractor application" from the alleged intrusion, but also does not provide sufficient facts concerning this category of damage. (*Id.*) Finally, Plaintiff alleges a potential personal security "risk" while merely observing that Packet Forensics' "core business is network surveillance and traffic interception." (*Id.* ¶¶ 145–46.) Importantly, Plaintiff does not allege that Packet Forensics has used or otherwise disclosed to third parties Plaintiff's social security number. She explicitly acknowledges that she cannot do so. (*Id.* ¶ 147.) Plaintiff thus does not establish the existence or causation of damages that is "plausible on its face." *See Iqbal*, 556 U.S. at 678.

## III. CONCLUSION

The Court should dismiss the two claims asserted against Defendant Packet Forensics, LLC.

DATED this 15th day of October, 2026.

OSBORN MALEDON, P.A.

By: s/Brandon T. Delgado
David B. Rosenbaum
Andrew G. Pappas
Brandon T. Delgado

OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793

Attorneys for Defendant Packet Forensics, LLC

**CERTIFICATE OF SERVICE**

I certify that the following party in this case is not registered as a CM/ECF user. I served, on October 15, 2026, the foregoing document, by U.S. mail and e-mail, as follows:

B.W.
3920 E. Thomas Rd., #15013
Phoenix, AZ 85060
BWvNTSK@proton.me
Pro Se Plaintiff

s/ C. Buxton