B.W.
3920 E. Thomas Rd., #15013
Phoenix, AZ 85060
BWvNTSK@proton.me
Plaintiff, Pro Se

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
OCT 28 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B.W.,<br><br>Plaintiff,<br><br>vs.<br><br>Netskope, et al.,<br><br>Defendants. | Case No. CV-26-04448-PHX-SPL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PACKET FORENSICS, LLC'S MOTION TO DISMISS ALL CLAIMS AGAINST IT IN PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Packet Forensics moves to dismiss Counts IX and XI on six grounds. Each depends on a characterization of the First Amended Complaint that the pleading does not bear, and the Motion concedes the standard in its own first footnote: "This motion, as it must, accepts as true all facts pled in the Complaint." (Doc. 33 at 2 n.1.)

Three features of the Motion frame everything that follows.

First, the Motion's own Statement of Facts describes Packet Forensics as an entity that "**agreed to conduct 'clearance investigation[s]' and eventually 'hold security clearances'**" under a Master Services Agreement with Netskope. (Doc. 33 at 3.) Four pages later it argues that Packet Forensics passively received Plaintiff's Social Security Number.

Second, the Motion states that "Netskope's EVP **wrongfully obtained** Plaintiff's

social security number and then **disclosed it to Packet Forensics**," and that the solicitation was made "**under a misrepresentation**." (Doc. 33 at 2, 8.) Packet Forensics thus accepts that what it received was obtained wrongfully and by misrepresentation. Every authority the Motion relies on concerns information lawfully gathered, publicly available, or taken by someone other than the defendant.

Third, the Motion makes Count IX depend on Count XI expressly: "As demonstrated below, Plaintiff's allegations fail to establish the tort for invasion of privacy. Thus, those non-tortious acts cannot serve as a basis for the alleged conspiracy." (Doc. 33 at 7.) Plaintiff therefore addresses Count XI first; if it states a claim, the Motion's second conspiracy ground fails by its own terms.

A complaint survives Rule 12(b)(6) if it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" a standard that "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff respectfully requests that the Motion be denied. In the alternative, Plaintiff requests leave to amend.

## II. COUNT XI STATES A CLAIM FOR INTRUSION UPON SECLUSION

### A. The First Amended Complaint alleges an intentional intrusion by Packet Forensics.

#### 1. The governing test asks whether Plaintiff had a reasonable expectation of seclusion in the matter intruded upon.

This Court has stated the standard: "A claim for intrusion upon seclusion requires the Plaintiff to prove two elements: (i) an intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns and (ii) that the intrusion would be highly offensive to a reasonable person." *Davis v. HDR Inc.*, 606 F. Supp. 3d 898, 910–11 (D. Ariz. 2022) (citing *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 279 (Ct. App. 1997), and Restatement (Second) of Torts § 652B). To satisfy the first element, "a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude in the **place, conversation, or matter**, and (b) that the

expectation was objectively reasonable." *Id.* (quoting *Dible v. City of Chandler*, No. CV 03-00249-PHX-JAT, 2005 WL 8162952, at *8 (D. Ariz. Jan. 10, 2005), and citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 812–13 (9th Cir. 2002) (applying Arizona law)). The subject of the expectation is "the place, conversation, or **matter**." A Social Security Number is a matter.

The pleading satisfies both prongs. Plaintiff "had a reasonable expectation of privacy in this information and did not consent to its use under the actual conditions under which it was solicited and retained." (FAC ¶ 141.) She provided it to one person, in reliance on a stated purpose, through "a messaging application that does not retain its contents." (FAC ¶¶ 66, 142.) She was never provided with a Standard Form 86, a Standard Form 85, or any other standard federal personnel security questionnaire, never executed any written authorization or consent, and was never contacted by any investigator, facility security officer, or government representative. (FAC ¶ 33.)

**2. Packet Forensics' three examples are drawn from a comment this Court quoted in full, and omit the category two of them belong to.**

The Motion offers three examples of intentional intrusion — forcing into a hotel room, binoculars at an upstairs window, and a forged court order — and treats them as the recognized universe. (Doc. 33 at 7.) On the page the Motion cites, this Court quoted the comment those examples come from, in full:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. **It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or**

> **compelling him by a forged court order to permit an inspection of his personal documents.**

*Hart*, 190 Ariz. at 279, 947 P.2d at 853 (quoting Restatement § 652B cmt. b); *see also Davis*, 606 F. Supp. 3d at 910–11 (quoting the same comment in full).

Comment b describes three categories: physical entry, sensory observation, and "some other form of investigation or examination into his private concerns." The third is neither of the first two — examining a private bank account involves no entry and no sense. **The forged court order the Motion cites is the last example in that third category.** The Motion takes one example from each of the first two categories and the final example of the third, omitting the sentence that defines it.

The Ninth Circuit reads the comment the same way, and so does Packet Forensics' own authority. *See Warner v. Midland Credit Mgmt., Inc.*, 540 F. Supp. 3d 946, 971 (C.D. Cal. 2021) (citing *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019), as "noting an intrusion upon seclusion may involve some form of investigation or examination into a person's private concerns, such as examining a person's private bank account").

Comment c, quoted in the same passage of *Davis* with emphasis supplied by the Court, is likewise disjunctive: "The defendant is subject to liability . . . only when he has intruded into a private place, **or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs**." *Hart*, 190 Ariz. at 279, 947 P.2d at 853; *Davis*, 606 F. Supp. 3d at 910–11. The clause after the disjunctive is about affairs, not places.

**3. The "place of privacy or seclusion" formulation does not confine the tort to physical places.**

*Davis* also quoted *Maguire v. Coltrell* for the proposition that "the tort arises only when a defendant intrudes upon a place of privacy or seclusion established and maintained by the plaintiff." 606 F. Supp. 3d at 910–11 (quoting *Maguire v. Coltrell*, No. CV-14-01255-PHX-DGC, 2015 WL 6168417, at *6 (D. Ariz. Oct. 21, 2015)). Read

in context, that sentence restates comment c rather than limiting the tort to physical places: it appears immediately after *Maguire* reproduced comment b in full, including the third category, and immediately before comment c's disjunctive sentence. *Id.* And when the court applied the standard it used neither "place" nor "premises," asking whether the defendant had made a "deliberate intrusion into a **sphere of privacy or seclusion** [the plaintiff] had created." *Id.*

*Maguire* also addressed covert acquisition directly. The plaintiff there alleged the defendant claimed to have a "mole" among her associates supplying information about her. The court held that "**[a]lthough spying on another person through a mole among that person's close associates might in some cases qualify for the tort of intrusion upon seclusion**," the claim failed because she "presented no evidence . . . that a mole actually existed," and none "that any confidential or sensitive information was ever acquired . . . and transmitted to [the defendant]." *Id.* at *7. Covert acquisition, with no place entered and no sense employed, may therefore constitute the tort; *Maguire* failed on proof, after a two-day bench trial. *Id.* at *1, *7.

Here, acquisition and transmission are pleaded, and the Motion concedes both: "Netskope's EVP wrongfully obtained Plaintiff's social security number and then **disclosed it to Packet Forensics.**" (Doc. 33 at 2.)

**4. *Davis* turned on the plaintiff's inability to control access. Plaintiff controlled this information absolutely.**

*Davis* dismissed because the plaintiff's expectation was not objectively reasonable, and the reason was control: she had "**no control over who could access and view**" what she posted. 606 F. Supp. 3d at 910–11. She had posted to Facebook groups of roughly 32,400 and 930 members, administered by third parties, and the Court found she "relinquished any expectation of privacy in her online communications when she posted them in the Groups." *Id.* It was on that basis — an expectation already relinquished — that the defendant's alleged deceit in gaining admission to the groups did not alter the analysis. *Id.*

Plaintiff relinquished nothing. There was no forum, no administrator, no membership, no screening process. She held her Social Security Number privately and disclosed it to one person, on a represented purpose, through a channel that retains no record. (FAC ¶¶ 66, 139, 141, 142.) The control *Davis* found absent is present here in full.

**5. On the pleading, and on the Motion's own description of the arrangement, Packet Forensics did not passively receive anything.**

The Motion asserts that "on Plaintiff's own account, Packet Forensics passively received her social security number." (Doc. 33 at 8.) Paragraph 145 reads:

> The Federal Vendor is directly liable for its own conduct. The Federal Vendor received, or was given access to, Plaintiff's Social Security Number **through a clearance process that it knew was not properly constituted . . . because it was the entity that had committed by Master Service Agreement to hold the clearances and it knew it could not fulfill that commitment**. No Standard Form 86, Standard Form 85, or other written consent was ever obtained from Plaintiff. The Federal Vendor **retained** Plaintiff's Social Security Number without consent and without notice of disposition.

(FAC ¶ 145.) The Motion quotes seven words of it. The paragraph pleads knowledge; its source, Packet Forensics' own contractual undertaking; the absence of any consent instrument; and an affirmative act after receipt — retention without consent and without notice of disposition.

The pleading supplies the rest. Paragraph 126 alleges that Packet Forensics' own overt acts included "**receiving, processing, and retaining** Plaintiff's Social Security Number through a clearance process that was not properly constituted and for which no standard federal consent instrument was ever obtained." (FAC ¶ 126.) Processing is not passive. An entity that contracted to conduct clearance investigations, as the Motion states (Doc. 33 at 3), receives identifying information in the course of that process,

knows the process is not properly constituted because it cannot perform the commitment the process depends on, obtains no consent, and then retains the information indefinitely, has engaged in "some other form of investigation or examination into [Plaintiff's] private concerns." Restatement § 652B cmt. b.

The Motion elsewhere calls the allegation that Packet Forensics could not perform that commitment unsupported by fact. (Doc. 33 at 3.) Rule 12(b)(6) tests whether a fact is alleged, not whether it is proven, and the Motion both accepts the pleaded facts as true and describes this allegation as pleaded. (Doc. 33 at 2 n.1, 5.)

**6. *Prutsman* and *Warner* describe defendants that did nothing.**

*Prutsman v. Nonstop Admin. & Ins. Servs., Inc.*, 2023 WL 5257696 (N.D. Cal. Aug. 16, 2023), was a third-party data breach in which the information was posted by "cybercriminals"; the court held "[n]othing in the complaint suggests that Nonstop was anything but negligent and passive," *id.* at *1, because the complaint alleged only negligence. Here there is no hacker, the recipient is the defendant, and paragraph 145 pleads knowledge. And the *Warner* holding the Motion invokes — "[t]here is **no evidence** defendant Encore . . . had any interactions with Plaintiff" — is a summary judgment ruling entered for a holding company. 540 F. Supp. 3d at 971.

**7. Consent obtained by misrepresentation is not consent.**

Misrepresentation does two distinct kinds of work. In *Davis* it was immaterial because the plaintiff had no reasonable expectation to begin with; here the expectation is pleaded, and the misrepresentation goes to consent. The Motion assumes Plaintiff consented. She pleads she did not: "**Consent obtained by misrepresentation is not consent.**" (FAC ¶ 143.) And any consent was "bounded by the purpose for which it was sought" — not consent "to indefinite retention of that information by an executive holding an undisclosed ownership interest in the recipient, after the engagement has ended and after the stated purpose has failed." (FAC ¶ 144.)

**B. Offensiveness cannot be resolved against the pleading as a matter of law.**

The Motion's heading states the standard it has chosen: "**As a matter of law,**

Packet Forensics' actions were not 'highly offensive.'" (Doc. 33 at 8.)

**1. Neither the Motion nor Plaintiff identifies a decision in this District or in Arizona resolving the offensiveness element on a motion to dismiss.**

*Hart* found no intrusion at the threshold and did not reach offensiveness. 190 Ariz. at 279, 947 P.2d at 853. *Davis* stated the element and expressly declined to reach it, holding that "the Court need not reach the question of whether . . . Defendant's alleged invasion would be 'highly offensive to a reasonable person.'" 606 F. Supp. 3d at 910–11. *Maguire* reached it only after a two-day bench trial. 2015 WL 6168417, at *7. And where a court in this District has resolved the element, it did so on summary judgment, on a developed record of call logs, concluding that "the Plaintiffs have not presented evidence that would save their claim." *Shupe v. Bank of Am., NA*, No. CV-13-00019-TUC-JGZ, Doc. 172, at 12–13 (D. Ariz. Jan. 21, 2015), adopted, Doc. 180 (Mar. 12, 2015).

Packet Forensics' own authority treats the question as one of fact. In *Warner*, the court denied summary judgment to two defendants, holding that whether the intrusion was highly offensive "is a question for the trier of fact," decided on "context, circumstances, and the defendants' motives and objectives." 540 F. Supp. 3d at 971. *Warner* applies California law and is persuasive only. But Packet Forensics asks this Court to resolve offensiveness as a matter of law while relying on a decision that declined to, and on a pleading with no record at all.

**2. *Phillips*, *Low* and *White* concern information that was lawfully gathered, publicly sourced, or taken by someone else.**

*Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 996 (9th Cir. 2023), is an Article III standing decision affirming summary judgment on constitutional expungement claims, in which "many of the records were created with 'open source information available to the public.'" The opinion says two separate things. One, quoted from *Russell v. Gregoire*, 124 F.3d 1079, 1082, 1094 (9th Cir. 1997), is a statement about a list: "A person's '**name, address, date and place of birth, place of**

**employment, . . . and social security number**' are not 'generally considered "private."'" 74 F.4th at 996. The other, stated independently, is that those plaintiffs had not shown the information was "so sensitive that another's access to that information 'would be highly offensive to a reasonable person.'" *Id.* The same paragraph then cites *Nayab* for "holding that obtaining another's consumer credit report is analogous to intrusion upon seclusion because 'a credit report can contain highly personal information.'" *Id.* The Motion's own authority thus treats a third party's obtaining of information as the analogue to this tort. The Motion renders the *Russell* list as a holding about Social Security Numbers alone and joins the sensitivity statement to it with "thus." (Doc. 33 at 8.)

*Phillips* also identified what its plaintiffs lacked, observing that the court has "always identified something beyond retention alone," including "a violation of the common law right to privacy." 74 F.4th at 993. That is the distinction comment c draws. Comment c withholds liability for "the examination of a public record concerning the plaintiff," then states that "[e]ven in a public place, however, there may be some matters about the plaintiff . . . that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." Restatement § 652B cmt. c. A Social Security Number solicited privately, on a represented purpose, through a messaging application that does not retain its contents (FAC ¶¶ 66, 142), is neither.

*Low* and *White* add nothing. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), concerned user identification numbers and viewed-page URLs, not a Social Security Number, and *White v. Social Security Administration*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015), dismissed with leave to amend because the plaintiffs alleged only that an agency employee photocopied identity documents "**without any allegation that he sold, distributed, or otherwise improperly used the information**." Both applied California's "high bar," which Arizona has not adopted, and neither involved information obtained by misrepresentation.

**3. The Motion does not address the offensiveness allegation the pleading actually**

**makes.**

Paragraph 145 ties offensiveness to three specific circumstances:

> A reasonable person in Plaintiff's position would find the receipt and indefinite retention of her Social Security Number, **by an entity whose stated core business is network surveillance and traffic interception, obtained without the consent instrument that any legitimate clearance process requires**, and **at the direction of an executive holding an undisclosed ownership interest in that entity**, highly offensive.

(FAC ¶ 145.) The Motion's offensiveness section does not quote this sentence or engage any of the three circumstances. The phrase "core business is network surveillance and traffic interception" appears once in the Motion, in the damages section, as something Plaintiff is "merely observing." (Doc. 33 at 9.) The pleading does not merely observe it: paragraph 34 alleges Packet Forensics "publicly describes its own core business as complex network surveillance and active network defence," and identifies three issued United States patents assigned to it.

The Ninth Circuit grounds offensiveness in the sensitivity of what was taken: such a plaintiff "is deprived of the right to keep private the sensitive information about his or her person," and "[t]his harm is highly offensive and is not trivial because a credit report can contain highly personal information." *Nayab*, 942 F.3d at 492.

Nor is the inquiry confined to a single discrete act. Comment d's own illustration is a course of conduct over time: "when . . . telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence." Restatement § 652B cmt. d, *quoted in Shupe*, Doc. 172, at 11. Plaintiff pleads in the alternative that "the continued retention of her Social Security Number without her consent and without notice of its disposition is itself a continuing invasion of her privacy." (FAC ¶ 67.)

Whether a reasonable person would find these circumstances highly offensive is not a question this record permits the Court to answer against the pleading.

**C. Use and disclosure are not elements of this tort.**

The Motion's damages argument rests on the proposition that Plaintiff "does not allege that Packet Forensics has used or otherwise disclosed to third parties Plaintiff's social security number," and that "[s]he explicitly acknowledges that she cannot do so. (Id. ¶ 147.)" (Doc. 33 at 9.)

Paragraph 147 says something different:

> The full extent of the harm alleged in this Count cannot presently be determined, **and that is a consequence of Defendants' own conduct**. Plaintiff has never been told what was submitted, to whom, under what authority, which systems or databases were queried, what record resulted, whether the information has been retained or destroyed, or whether it was accessed for any purpose other than the purpose represented to her. . . . [S]he **cannot quantify a compromise whose scope is known only to Defendants** and to the systems to which they transmitted her information.

(FAC ¶ 147.) The paragraph alleges that the scope of the intrusion is within Defendants' knowledge and not Plaintiff's. It concedes nothing.

The law answers the premise as well as the characterization. "The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined." Restatement § 652B cmt. b; *see Nayab*, 942 F.3d at 493 (concrete harm on obtaining, "regardless whether the credit report is published or otherwise used by that third-party"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("privacy torts do not always require additional consequences to be actionable," quoting *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019)). The Supreme Court has identified intrusion upon seclusion as "[c]hief among" the intangible harms traditionally recognized as supporting suit. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

Disclosure is, moreover, the element of a different tort within the four-part classification Arizona adopted: publicity under § 652D, which comment a confines to

communication "to the public at large" and which states that "it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Restatement § 652D cmt. a. Count XI is pleaded under § 652B. (FAC ¶ 138.)

Plaintiff pleads ongoing personal security risk, ongoing psychological harm arising from the continuing nature of the intrusion, and present harm to her federal contractor application. (FAC ¶¶ 128, 146.) At the pleading stage that is sufficient; the amount and proof of damages are for discovery and trial.

## III. COUNT IX STATES A CLAIM FOR CIVIL CONSPIRACY

### A. The Motion attributes to paragraph 124 a phrase the paragraph does not contain.

The Motion states: "Plaintiff alleges that Defendants undertook 'independent acts,' which undermines any suggestion that they acted under an agreement to commit a tort. (Id.)" (Doc. 33 at 4.) The citation is to paragraph 124.

Paragraph 124 concludes:

> **These are not parallel acts undertaken independently in each party's own separate interest. They are interdependent acts serving a single shared financial interest, from which the existence of an agreement is reasonably inferred.**

(FAC ¶ 124.) The phrase "independent acts" does not appear in paragraph 124, or anywhere in Count IX. The Motion's next sentence quotes the second half of the same sentence accurately. (Doc. 33 at 4.) Plaintiff notes the discrepancy and proceeds.

### B. The agreement need not be express, and Arizona law says so.

"For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 498 (2002).

The Motion also invokes *Wells Fargo*'s conspiracy holding. (Doc. 33 at 5, citing

201 Ariz. at 499.) That holding reviewed summary judgment on a developed record, and the Court described its own inquiry in those terms: "the issue here is whether the evidence is sufficient to overcome a motion for summary judgment." 201 Ariz. 474, ¶ 103. The sentence the Motion quotes continues past the quotation: the correspondence and meetings "raise serious questions about the Bank's activity," but the inference of agreement "cannot rise to the **clear and convincing** level." *Id.* ¶ 100. And the Court framed the distinction in terms of proof — "a qualitative difference between **proving** an agreement to participate in a tort . . . and **proving** knowing action that substantially aids another to commit a tort." *Id.* ¶ 101. Clear and convincing evidence is what a conspiracy plaintiff must marshal at trial. It is not the measure of a complaint.

In *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 510 (1997), the Arizona Supreme Court set out Restatement (Second) of Torts § 876(a) and its comments. Comment a provides: "Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. **The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself.**" *Id.*

Paragraph 124 is pleaded to that standard. It identifies specific facts, each on Plaintiff's personal knowledge, and pleads the terms of the agreement on information and belief as matters peculiarly within Defendants' possession. Among them: Packet Forensics' principals recruited the EVP into the technology industry and, during the engagement, referred to him the investor who funded his successor entity while simultaneously serving as clearance vendor for the federal environment he controlled; the EVP held his own clearance by virtue of Packet Forensics; and he routed Plaintiff's Social Security Number into a clearance process run through the entity in which he held an undisclosed stake. (FAC ¶ 124.)

The Ninth Circuit "relax[es] pleading requirements where the relevant facts are known only to the defendant," and on that basis reversed the dismissal of a civil conspiracy claim. *Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017)

(quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)). The pleading alleges the relevant dealings were conducted through personal electronic mail, a messaging application that does not retain its contents, and clearance-restricted channels from which Plaintiff was structurally excluded. (FAC ¶¶ 21, 28, 126.)

*Hillis v. Heineman*, 2009 WL 2222709 (D. Ariz. July 23, 2009), does not reach this pleading. The complaint there alleged one fact against one defendant: that an attorney "actively prepared the Subscription Agreements which, with Bartko's knowledge, were targeted to Arizona residents." *Id.* at *4. The court held "[a]ssistance to the tortfeasor by itself . . . is insufficient," and dismissed because the complaint alleged "no facts" showing an actual agreement. *Id.* Paragraph 124 alleges not assistance but a relationship predating the engagement, a financial interest running in both directions, and a course of conduct in which each party's acts depended on the other's.

**C. Overt acts in furtherance of a conspiracy need not each be an independent tort.**

The Motion's second ground catalogues ten allegations and concludes that "[n]one of Plaintiff's allegations, separately or together, can plausibly establish a tort against Plaintiff." (Doc. 33 at 5–6.) Every item is drawn from paragraphs 126 and 127, which plead overt acts in furtherance of the conspiracy.

Those paragraphs do not lump the Defendants together. Paragraph 126 enumerates "[t]he Federal Vendor's own overt acts in furtherance of the conspiracy" separately and by name, among them "**receiving, processing, and retaining** Plaintiff's Social Security Number through a clearance process that was not properly constituted." (FAC ¶ 126.) Paragraph 124 likewise attributes each of its facts to a named actor. The Motion's list draws individual items out of that enumeration without reproducing the sentence that organizes them. The underlying torts are identified in paragraph 124's first sentence: "the tortious acts described in Counts VI, VII, and XI." (FAC ¶ 124.)

Restatement § 876(a) comment b, as set out in *Estate of Hernandez*, states the

requirement: "there must be acts of a tortious character in carrying it into execution." 187 Ariz. at 510. That calls for acts of a tortious character in execution of the plan — not ten separate independent torts. Nor must each conspirator perform each act. "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980)).

**D. The pleading alleges damages caused by acts committed pursuant to the conspiracy.**

The Motion quotes *Estate of Hernandez* for the proposition that "absent an underlying tort causing damages, 'there is no' standalone 'civil action for conspiracy.'" (Doc. 33 at 4.) The passage reads in full: "In Arizona, there is no civil action for conspiracy. **However, there is an action for damages caused by acts committed pursuant to a conspiracy.**" 187 Ariz. at 510. That is this claim. A conspirator's liability runs to the damage caused by the acts committed pursuant to the conspiracy. *Id.*

Paragraph 128 identifies three categories of harm: compensation rendered without informed consent; ongoing personal security risk and psychological harm arising from the compromise and continuing retention of Plaintiff's Social Security Number; and present harm to her federal contractor application. Each is developed in the incorporated counts. (FAC ¶¶ 108, 128, 146, 147.)

**IV. DOCUMENT 18**

Document 18 was directed at Count IX of the original Complaint, which the First Amended Complaint superseded on October 1, 2026, and should be denied as moot.

**V. IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED**

Should the Court find either count insufficiently pleaded, leave to amend should be granted. "Dismissal without leave to amend is proper only if it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Swartz*, 476 F.3d at

760 (quoting *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003)). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts," and the "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), and *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). In *Swartz* the Ninth Circuit held that although "Swartz failed to sufficiently detail the roles played by the defendants," "the defects may be curable," and "reverse[d] the denial of leave to amend" the civil conspiracy claim. 476 F.3d at 765. And both of the Motion's privacy authorities that reached the question granted leave — this Court in *Davis* quoting *Lopez* itself. *Davis*, 606 F. Supp. 3d at 910–11; *White*, 111 F. Supp. 3d at 1053.

Plaintiff identifies the following facts, consistent with the First Amended Complaint, that she is prepared to plead:

(a) that in addition to her Social Security Number, the EVP obtained further categories of Plaintiff's personal identifying information — her date of birth, her driver's license information, and her home address — each provided during the engagement; that Plaintiff has never received notice of the disposition, destruction, or return of any of that information, and on that basis alleges that the EVP retains it; and that the circumstances of each transmission, the use made of each, and its disposition are facts within Defendants' knowledge and not Plaintiff's; and

(b) that Plaintiff provided a company-confidential background check form on Packet Forensics' behalf to each other contractor she processed through Packet Forensics' administrative onboarding, for completion and execution before Packet Forensics ran identifying information and clearance checks, and that no such form was ever provided to Plaintiff.

**VI. CONCLUSION**

The Motion should be denied. In the alternative, Plaintiff should be granted leave to amend.

SUBMITTED this 28th day of October, 2026.

____________________________

B.W.

Plaintiff, Pro Se

CERTIFICATE OF SERVICE

I certify that on October 28, 2026 I filed the foregoing with the Clerk of Court and served a true and correct copy on the following counsel of record by electronic mail:

Leah S. Freed, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800, 2415 E. Camelback Rd., Phoenix, AZ 85016
leah.freed@ogletree.com — Attorneys for Defendant Netskope, Inc.

David B. Rosenbaum / Andrew G. Pappas / Brandon T. Delgado
OSBORN MALEDON, P.A., 2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2793
drosenbaum@omlaw.com / apappas@omlaw.com / bdelgado@omlaw.com
Attorneys for Defendant Packet Forensics, LLC

____________________________

B.W.

Plaintiff, Pro Se